## LUMB v. PINCKNEY.

1. Where a complaint under the betterment act (*Gen. Stat.*, §§ 1835–1839) alleged a former recovery by defendant against plaintiffs of the land described, the possession by plaintiffs under title which they supposed had conveyed a fee, and the value of improvements erected on this land by plaintiffs, and contained a prayer for a recovery of the value of such improvements, the complaint stated facts sufficient to constitute a cause of action.
2. The betterment law of this state (*Gen. Stat.*, §§ 1835–1839) is not in conflict with sections 1, 14, 21, or 23 of article I. of the constitution of this state, but is a valid and binding enactment of the legislature.

Before COTHRAN, J., Hampton, September, 1883.

This was an action by James M. Lumb and others against Adele R. Pinckney and others, commenced in February, 1883. The opinion sufficiently states the case.

*Mr. John S. Reynolds*, for appellants.

The rule of the civil law touching betterments has never been recognized in this state. 4 *DeSaus.*, 465; *Chev. Eq.*, 213. The complaint discloses no facts that give a cause of action. *Pom. Rem.*, § 519; 18 *S. C.*, 530; 10 *Id.*, 451; 31 *Vt.*, 306. This law gives a right of action against one charged with no wrong, and makes the lien of the trespasser sufficient to divest

the true owner's title; and the judgment for the improvements carries costs. The betterment act of this state is taken from the Vermont statute, but in Vermont there is an elective feature, which may preserve to the owner his property; and upon this ground the statute has been sustained. 4 *Vt.*, 37. In most of the states this elective feature exists. 12 *Mass.*, 314; 14 *Ill.*, 174; 50 *Me.*, 322; 18 *Blatch.*, 202; 18 *Iowa*, 267; 3 *Ohio St.*, 467; and so in other states. *Cool. Con. Lim.*, 386, 389. See, too, this elective feature in other parts of our statute law. *Gen. Stat.*, §§ 1840, 2289, and the homestead laws; 19 *S. C.*, 243. This law violates *Const.*, art. I., § 1; 7 *Cal.*, 6; 11 *S. C.*, 315; 8 *Wheat.*, 17, 24, 101; 18 *Tex.*, 546. It also violates art. I., § 14. *Cool. Cons. Lim.*, 353, 357; 18 *Iowa*, 268; 24 *Minn.*, 372; also, art. I., § 21; 1 *Yerg.*, 384; *Cooke*, 293. And it also violates section 23 of the same article. 14 *S. C.*, 423. This statute is not a mere regulation of the remedy. *Cool. Con. Lim.*, 289, 362; 35 *N. Y.*, 302; 13 *Rich.*, 498.

*Mr. C. J. C. Hutson*, contra.

The complaint states a cause of action. *Code*, § 163; 28 *Barb.*, 231; 8 *S. C.*, 104; 12 *Id.*, 1; 16 *Id.*, 392. Compensation for improvements is founded in equity. *Black. Tax Titles*, 17; 3 *Kent*, 334; 2 *Id.*, 336; 5 *Rep.*, 30; 4 *T. R.*, 168; 1 *Story*, 38; 2 *Id.*, 605; *Code Civ. of France*, art. 552–3; *Bell Com.*, § 538; *Chev. Eq.*, 231; 2 *McCord Ch.*, 455; 4 *Rich. Eq.*, 476. Our betterment act is a copy of the Vermont statute, which was sustained in 31 *Vt.*, 300. Like statutes in other states have been sustained. 12 *Mass.*, 314; 18 *Blatchf.*, 202; 10 *Yerg.*, 477; 13 *Ala.*, 31; 4 *Kans.*, 358; 18 *Iowa*, 261; 5 *Ohio*, 133; 13 *Id.*, 74, 308; 2 *Peters*, 492; 8 *Wheat.*, 1; 1 *Black.*, 374; 14 *Ill.*, 171; 19 *Wis.*, 235. See, too, 12 *S. C.*, 488; 15 *Id.*, 368; 17 *Id.*, 594. This act violates none of the sections of the constitution referred to by appellants. 4 *Wheat.*, 122; 12 *Id.*, 213; 14 *Rich.*, 135; *Cool. Con. Lim.*, 348, 437, 439; 6 *Cranch.*, 87; *Bald.*, 74.

September 24, 1884. The opinion of the court was delivered by MR. CHIEF JUSTICE SIMPSON. The action below was an action

under the act, known as the "betterment act," to recover the value of certain improvements erected upon the lands recovered by the defendants from the plaintiffs in a former action brought for that purpose. To this action for betterments, a demurrer was interposed, on the ground that the complaint did not state facts sufficient to constitute a cause of action. This demurrer was overruled, and the defendants have appealed. The appeal presents two questions. 1. Whether the facts stated in the complaint are sufficient to bring the case within the provisions of the betterment act; and, 2. If so, whether the betterment act is constitutional. The appeal rests on the negative of both of these questions. Can these denials be sustained?

I. There are several sections of the betterment act. *Gen. Stat.*, §§ 1835, 1836, 1837, 1838, 1839. The most important of these sections, in fact the only one necessary to be considered here, is section 1835, because in that section are found the conditions upon which the right to betterments is founded, and the recovery thereof is allowed and authorized. That section provides: "That after final judgment in an action to recover lands and tenements in favor of the plaintiff, if the defendant has purchased the lands so recovered, &c., supposing at the time of such purchase, &c., that his title was good in fee, such defendant shall be entitled to recover of the plaintiff in such action the full value of all improvements made upon such lands by such defendant, or those under whom he claims, in the manner hereinafter provided for."

Now, all that is necessary to be stated in a complaint under the reformed procedure, so as to escape a demurrer like that interposed here, are the facts which have given rise to the right of action, as contradistinguished from legal conclusions. A simple narrative of the facts upon which the right of action is based is not only good pleading, but the best. From such a narrative the court deduces the legal conclusions, and determines whether any primary right of the plaintiff has been invaded by the defendant, and consequently whether a cause of action exists. *Suber* v. *Chandler*, 18 *S. C.*, 530; *Hogg* v. *Pinckney*, 16 *Id.*, 392.

The facts specified in section 1835, *supra*, which, when existing, entitle a party to the action therein provided, and which

must be stated in the complaint as a cause of action under the act, are: 1. A final judgment in favor of the plaintiff in an action to recover lands and tenements ; and, 2. That the defendant, in such action, and those under whom he claims being in possession under the supposition that he was seized in fee, had erected improvements of value upon the land. Upon these facts the act in terms entitles such defendant to recover of the plaintiff "the full value of all said improvements—the said value to be measured by the sum which such land shall be found at the time of the rendition of such judgment to be worth more in consequence of the improvements than it would have been without them." § 1836.

Does the complaint state the facts thus required by the act and upon which a right of recovery attaches ? In the first paragraph the former action for the recovery of the land by the defendant against the plaintiff, and the verdict in favor of defendants are stated ; in the second and third the possession of plaintiffs under titles which they supposed conveyed to them the land in fee is set out in detail ; and in the fourth the value of the improvements erected by the plaintiff and those under whom they claimed is presented, with a prayer for judgment for said value to be recovered in accordance with the statute in such case made and provided We do not see how the complaint could have followed the act more closely.

II. Is the betterment act unconstitutional ? This is the real question in the case, and it deserves full consideration.

It is true that according to the severe and rigid principles of the English common law, founded and established in feudal times and in support of feudal interests and doctrines, title to lands carried with it the land and every thing affixed and attached thereto. The owner of the fee was regarded as the owner of all structures and improvements found upon the premises ; so that he who erected such improvements, erected them at his peril. This doctrine, though firmly established in the common law, and though a logical result from the settled principles applicable to real estate and the ownership thereof in England, yet is obviously a harsh and inequitable doctrine when adhered to as a universal and inflexible rule, and it is nowhere found as a ruling princi-

ple, except where the English common law prevails in all of its original severity. It has no place in the laws of France, Spain, or Scotland ; in fact, is repudiated wherever the equitable principles of the civil law have found a foothold in the administration of justice.

In this country, even before the legislatures of the different states intervened by special acts on the subject, the courts of equity, influenced by what Judge Story styled a "persuasive equity" to the contrary, struggled against it, and contended for the higher doctrine, that he who *bona fide* takes possession of land under a *prima facie* legal title, and makes valuable improvements, which must pass with the freehold to the party asserting his paramount right, is deemed by the established rule in chancery entitled to compensation. *Bright* v. *Boyd*, 2 *Story*, 607 ; *Lowndes* v. *Chisholm*, 2 *McCord Ch.*, 455 ; *Williman* v. *Holmes*, 4 *Rich. Eq.*, 476 ; followed by *Annely* v. *DeSaussure*, 17 *S. C.*, 389 ; *Scaife* v. *Thomson*, 15 *Id.*, 366 ; and *Jacobs* v. *Bush*, 17 *Id.*, 594. No fair mind can hesitate to acknowledge the justice of this principle ; and still further, that services of a lasting and permanent character rendered by one to another, demand compensation whether such services were procured originally by request or not, and a perfect system of jurisprudence would require the application of this principle in all cases where parties stood in this relation to each other. It is admitted, however, that neither the common law nor the equity courts have gone to this extent as yet. Nor can they, not being invested with legislative power.

In most of the American states the equity of this principle as to improvements *bona fide* erected on lands supposed to be owned in fee, but afterwards recovered by paramount title, has, however, been recognised, as appears in the numerous betterment acts which have been passed. Among these the betterment act of our state is found. No doubt these acts in their details are more or less imperfect, and in their application are not only surrounded with difficulties, but frequently work injustice. Yet as to the end intended to be accomplished, but few can fail to approve. The question, however, before us is not as to the wisdom of the act nor its efficiency, nor whether it is suitable to the end

designed, nor yet whether it might be improved by the incorporation of other features. The act is upon the statute books, and we must take it as we find it, and if valid must enforce it.

Is the act constitutional? Mr. Justice McIver, in the case of *State* v. *Gaillard,* 11 *S. C.,* 309, laid down a clear and concise rule by which to test the legislative power of the general assembly of the state, and the constitutionality of any special act. He said: "There is no doubt but that under article II., section 1, of the constitution, the legislative power of the state is vested in the general assembly, but there is as little doubt that this is not a grant of complete and absolute legislative power, but only such as is not forbidden by the terms of the constitution of the United States or of this state, either in express words or by necessary implication. Hence, when the inquiry arises, whether a particular act of the general assembly is within the scope of the powers granted to that body, the only question necessary to be considered is whether such act is forbidden, either in express terms or by necessary implication by any provision of the constitution of the United States or this state; for if it is not so forbidden, then such act has the full force and effect of law; but if it is so forbidden, then it has no such force and effect, and must be declared to be unconstitutional, and therefore void."

This is the test we must apply to the question here. It is not claimed that any provision of the constitution of the United States is involved. The question, therefore, is, does the constitution of the state forbid it either in express words, or by necessary implication? It has not been contended that any express inhibition can be found in that instrument, nor is there ground for such position. Is there any for an inhibition by necessary implication? Without attempting here to define the conditions of a necessary implication applicable to every case where the question arises, it is sufficient for our present purpose to say that the constitution guarantees in several of its sections, certain rights to the citizen, and inasmuch as the constitution is the supreme law of the land, it by necessary implication forbids the general assembly from passing any law in conflict with these guarantees. The general assembly has no power to repeal a section of the constitution, not that it is expressly prohibited from such act, but

because the constitution is the organic law, ordained and enacted by the people themselves, the source of all governmental power, and therefore beyond the reach of all subordinate authorities.

The principal sections containing these guarantees are sections 1, 14, 21, and 23, of article I. The appellants contend that the act violates all of these sections. In section 1 the right of acquiring, possessing, and protecting property, is declared to be one of the inalienable rights of the citizen. In section 14 it is declared that no one shall be deprived of his estate, but by the judgment of his peers or the law of the land. Section 21 forbids the enactment of any law impairing the obligation of contracts. And section 23 provides that private property shall not be taken, or applied for public use, or for the use of corporations, or for private use, without the consent of the owner or a just compensation being made therefor : *Provided*, That laws may be made securing to persons or corporations the right of way over the lands of other persons or corporations, &c.

Does this act infringe upon the inalienable right of acquiring, possessing, and protecting property guaranteed in section 1? We think not. On the contrary, the purpose of the act being to protect the right of the improving claimant to the property which he has placed upon the premises in dispute, under the *bona fide* belief that the premises were his, it is, in our opinion, in full harmony with that section, and so far as the improving claimant is concerned, carries out its intent and object. There are equitable as well as legal primary rights in reference to the acquisition of property, and the protection of the constitution may be invoked by either, as the one or the other may happen to be the superior. Now while, as we have said, it is a principle of the common law, that the legal title of real estate, as a general rule, carries with it not only the land, but also all structures or improvements thereon, yet the equity doctrine in cases where valuable improvements have been made under the *bona fide* supposition that the land belonged in fee to the party erecting them, is that said improvements belong to said party, and this being a paramount right, it is entitled to the shield of the section referred to in preference to the legal title growing out of the mere ownership of the land. In this view the betterment act, being intended

as a means of securing to the improving claimant his recognized equitable rights over an inferior legal claim, is therefore not only not in violation of section 1, article I., but, on the contrary, is in accordance therewith.

Section 14 declares "that no one shall be deprived of his estate except by the judgment of his peers or the law of the land." This is an important and fundamental guarantee, one which lies at the foundation of all progress and improvement, and, within the limits intended by the framers of the constitution, it should be most sacredly guarded. But to construe it as intending to fix unalterably all laws of force at the adoption of the constitution, and as an inhibition against the passage of any new laws giving new rights and remedies as advancing civilization may demand, would be changing it from a shield of protection into an instrument of intolerable oppression. Such a construction would negative and destroy the grant of legislative power to the general assembly, and render that department of the government a useless appendage to our governmental system. This was not intended, nor can this section be so interpreted by any legitimate rule of construction. It simply means what it says, to wit: "That no one shall be deprived of his estate except by the judgment of his peers or the law of the land." Under it, the citizen, before surrendering his estate, has the right to demand a judgment of his peers requiring him to do so, or the existence of some law which when enforced demands it, and to that extent it is a limitation upon the power of the general assembly forbidding the enactment of any law which can deprive one of his estate by any other means. Thus understood, we do not see that the betterment act in any way conflicts with this section. The act has no application, except as the law of the land, nor can it be enforced, except through the verdict of the jury.

Section 21 provides, "that no law shall be passed impairing the obligation of contracts," and it is said that a grant from the state is a contract between the state and the grantee, and therefore any legislative act that impairs the obligation of the grant is unconstitutional. This, no doubt, is true, but we fail to see its application here. As well might it be said that the laws allowing the enforcement of contracts, or the collection of debts by the

sale of real estate, through judgments and executions, impaired the obligation of the original grant from the state, and were therefore void. The betterment act, formulating an underlying principle of equity, creates a legal obligation in the nature of a debt against the owner of the land, which, if he fails to meet, the land itself is made liable to be reached by ordinary process as in other cases of debt, and is as free from the objection raised as any of the modes provided for the enforcement of claims by the sale of lands granted by the state. The remedies in the two classes are the same in principle, and must stand or fall together.

Section 23. It appears to us that the respondent has the best right to invoke this section. It declares that private property shall not be taken for public or private use, without the consent of the owner, or a just compensation being made therefor. A party has erected valuable and permanent improvements upon a city lot, of which he is a *bona fide* purchaser, under a title apparently perfect and complete, enhancing ten times its original value. The true owner of the lot, either from inexcusable laches, or from some other cause, delays the assertion of his rights until these improvements have been completed. He then institutes action, recovers the lot, takes possession with the improvements, and refuses compensation. Should he be allowed to shield himself under this or any other of the sections of the constitution referred to ? On the other hand, could not the improving claimant, with infinite more justice, claim their protection ?

The claim of the land owner stands upon a mere legal technicality. He has titles to the land, it is true, which, at common law, carries with it every thing attached thereto. But the claim of the improving claimant stands upon substantial equity, based upon his labor and industry, and while he has no right to the land, it would be a blot upon any system of jurisprudence to make him forfeit the improvements, and that for the benefit of one who has expended neither labor nor money in their erection. The true idea is, that both parties should be protected according to their respective rights and interests. This the betterment act attempts by giving the improving claimant, not the costs of the improvements, but such an amount only as they may, in the judgment of the peers of both parties, increase the value of the

premises.     This certainly is the equity of the case, and we do not
find that the constitution, in any of its sections, forbids its appli-
cation and enforcement.

The appellants' counsel has referred us to several cases from
some of the western states, in which acts similar in their purpose
to ours have been held unconstitutional.     But these decisions,
upon examination, have been found to be based upon special mat-
ter peculiar to the acts under discussion there, and therefore not
in point, even if they could be relied on as authorities, which
they could not be, except so far as they are sustained by estab-
lished general principles.     Besides the weight of the decisions in
the different states where betterment acts have been enacted, is
in favor of their constitutionality.     See *Cooley Const. Lim.*, title
"betterment laws," the cases there cited, and *Blackwell Tax
Titles*, 681.

It is the judgment of this court that the judgment of the Cir-
cuit Court be affirmed.